UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| TWIN RIVER WORLDWIDE HOLDINGS, INC., <br> Plaintiff, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br> Defendant. | C.A. No. 17-008-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This dispute arose from Twin River's tender offer to Contingent Value Rights Holders (CVRs) on their post-bankruptcy shares. Twin River believed that it owed the CVRs a duty to pay them fair value before their shares expired and the common stock Stockholders, believed that Twin River had no duty to the CVRs, and a superior fiduciary duty to them NOT to pay the CVRs. In the end, Twin River paid the CVRs and settled the dispute with the Stockholders for $5.6 million after notifying National Union Fire Insurance Company of a potential claim under its insurance policy. Twin River made a claim for reimbursement under the policy and National Union denied coverage because it determined that Twin River did not make the payment to settle a covered claim.

Both Twin River and National Union have moved for summary judgment,[1] agreeing that there are no disputed issues of material fact on the breach of contract claim. They disagree on the outcome; Twin River advocates for coverage and National Union says there is none. The question posed in this case is whether the insured's payment to Stockholders and others to settle a dispute that arose from its bankruptcy, constitutes a covered claim under its insurance policy, requiring reimbursement of the payment. The Court agrees that summary judgment is appropriate here and answers that question in Twin River's favor. The $5.6 million settlement is a covered claim for a wrongful act under the policy and Twin River gave appropriate notice. Twin River's motion (ECF No. 22) is GRANTED; National Union's motion (ECF No. 24) is DENIED.

## FACTS

Twin River is a casino and live entertainment venue in Lincoln, Rhode Island. It filed for bankruptcy on June 23, 2009. The Plan of Reorganization coming out of bankruptcy created two classes of stockholders—the first lien lenders received 100% of Twin River's common stock and $300 million in new first lien debt (Stockholders) and the second lien lenders received Contingent Value Rights.[2] The CVRs would receive a portion of the consideration that Twin River would otherwise pay to the

---

[1] Twin Rivers captioned its motion as a partial motion because it believes a jury should decide the amount of damages.

[2] "A Contingent Value Rights (CVR) is a type of option that can be issued by the buyer of a company to the sellers. It specifies an event, which, if triggered, lets the sellers acquire more shares in the target company." https://en.wikipedia.org/wiki/Contingent_value_rights

Stockholders if Twin River engaged in a fundamental transaction such as a sale, by November 5, 2017, otherwise the CVRs would receive nothing.

By all accounts, Twin River did well coming out of bankruptcy and had some opportunities for growth. In June 2014, Twin River announced a potential buy back of the CVRs. Stockholders Solus Alternative Asset Management, LP (Solus) and Wingspan Asset Management, LP (Wingspan) sent a letter to Twin River on June 27, 2014 (the First Salvo), asserting that Twin River had a duty to them to delay making a fundamental transaction until after the expiration of the CVRs' rights to any payment, insisting that Twin River owed no fiduciary duty to the CVRs and threatening legal action. By letter dated October 22, 2014, Twin River notified its insurer, National Union, that Solus and Wingspan alleged that it was potentially in breach of its fiduciary duty to them both because Twin River was considering paying the CVRs on their shares, and because it was overvaluing the CVR share price. There is no dispute that the parties considered this letter as a notice of circumstance, notifying National Union that Twin River faced a situation with its Stockholders that had the potential to turn into a claim.

Taking the threat of suit from the Stockholders seriously, Twin River went back to Bankruptcy Court to clarify its obligations to the CVRs in light of the Stockholder's objections. The Bankruptcy Court required Twin River to file a declaratory judgment action, referred to as the Adversary Proceeding, against Solus, Wingspan, and another complaining Stockholder, Apollo Twin River Management, L.P. (Apollo). Because Twin River believed that it had an obligation to the CVRs, it

advocated that position in the Adversary Proceeding against the interests of the Stockholders. The Bankruptcy Court agreed with Twin River and the CVRs that Twin River did have obligations to the CVRs.[3]

The Stockholders appealed the Bankruptcy Court's decision on November 13, 2015; the same day, Solus' counsel sent a letter (the Second Salvo) to Twin River warning that Twin River would be in further breach of its fiduciary duties to the Stockholders if it went forward with a tender offer to the CVRs, citing the initial breach as Twin River's decision to file the Adversary Proceeding[4] in the first place.

Upon receiving the Bankruptcy Court's blessing, Twin River announced a tender offer to the CVRs. That same month, Apollo filed suit in Delaware against Twin River's Board of Directors and its Chief Financial Officer, alleging that Twin River's tender offer to the CVRs violated its fiduciary duties to the Stockholders (the Derivative Action). It sought rescissory damages due to a decrease in common stock prices.

Facing suit in Rhode Island and Delaware, Twin River, with National Union's consent, met with representatives of the CVRs and Stockholders to try to resolve the CVR value issue. The draft Memorandum of Understanding ("MOU") stated that the Stockholders would drop their pending appeal in the Adversary Proceeding and that

---

[3] The Stockholders appealed that decision to the United States District Court for the District of Rhode Island, arguing that Twin River should not have sided with the CVRs in that Adversary Proceeding. *BLB Worldwide Holdings, Inc. et al v. Twin River Worldwide Holdings, Inc. et al.*, 1:15-cv-487-WES. The parties dismissed the appeal after the settlement. *See* ECF No. 36 in 15-cv-487.

[4] The Bankruptcy Court ruled that the dispute had to be resolved through an adversary proceeding as opposed to a more informal one.

4

Twin River would pay them $5.6 million to reimburse their legal expenses and in exchange for releases relating not only to the appeal, but also to the Derivative Action and any other direct claims. Through a series of proposals attempting to settle the case, Twin River received a letter on January 21, 2016 ("Settlement Demand Letter") where the Stockholders repeated the allegation that Twin River breached its fiduciary duty and demanded reimbursement of $5.6 million they spent in fees and expenses and that Twin River limit its per share price to $425 per CVR. Twin River provided both the MOU and letter to National Union who responded that it had doubts about coverage for the proposed settlement, but agreed not to raise lack of advance consent as a coverage defense. National Union did not participate at all in the negotiations, ask for information about the claims, or request allocation of any potential settlement proceeds.

Twin River settled the dispute with the Stockholders and CVRs in February 2016 for $5.6 million with releases, and stipulations of dismissal of all claims and potential claims.[5] The Delaware Court approved the settlement. National Union thereafter denied the claim.

Twin River filed this suit, seeking coverage for the $5.6 settlement payment under the policy. National Union counters that Twin River failed to assert a claim.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure directs courts to "grant

---

[5] The $5.6 million was divided as follows: Apollo received $2.8 million and Solus and Wingspan split the remaining $2.8 million.

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). When evaluating "'cross-motions for summary judgment, the standard does not change; [courts] view each motion separately and draw all reasonable inferences in favor of the respective non-moving party.'" *Bonneau v. Plumbers & Pipefitters Local Union 51 Pension Trust Fund*, 736 F.3d 33, 36 (1st Cir. 2013) (quoting *Roman Catholic Bishop of Springfield v. Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)).

## ANALYSIS[6]

This is a standard contract claim where Rhode Island law applies and, as such, the Court will interpret the insurance contract through the lens of Rhode Island contract law. Rhode Island courts interpret insurance policies by "applying the rules for construction of written instruments."[7] *Allstate Ins. Co. v. Russo*, 641 A.2d 1304, 1306 (R.I. 1994); *see also Derderian v. Essex Ins. Co.*, 44 A.3d 122, 127 (R.I. 2012) (insurance policy terms interpreted in accordance with rules of construction governing contracts). "Contract interpretation presents, in the first instance, a question of law, and is therefore the court's responsibility." *Fashion House, Inc. v. K*

---

[6] The parties spent much of the briefing on these motions responding to and rebutting arguments based on facts that parties in turn say are irrelevant. National Union argues that Twin River continually changed its theory of what its claim was. And while the operative facts in this case starting with Twin River's emergence from bankruptcy have evolved over time, they ultimately are undisputed and can be considered in light of the insurance policy language.

[7] Rhode Island substantive law applies to this dispute because National Union issued the policy in Rhode Island to Twin River, a Rhode Island corporation, and because this case is before this Court under diversity jurisdiction. *Rosciti v. Ins. Co. of Penn.*, 659 F.3d 92, 96 (1st Cir. 2011).

6

mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989). "When a contract is unambiguous, [courts] review its terms in a de novo manner." *Papudesu v. Med. Malpractice Joint Underwriting Ass'n of R.I.*, 18 A.3d 495, 498 (R.I. 2011). In determining "whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." *Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I. 2000). When no ambiguity exists in the terms of an agreement, "judicial construction is at an end for the terms will be applied as written." *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004). Therefore, the Court will begin by examining the language of the relevant insurance contract provisions in order to determine whether the policy covers the $5.6 million settlement.

A.   The Policy

Twin River's National Union policy, specifically Endorsement 21 relating to Directors and Officers Coverage, governs here. Coverage B(i) provides Twin River coverage for its own actions and liabilities. It states, "[t]his policy shall pay the Loss of any Company arising from a Claim made against such Company for any Wrongful Act of such Company." The operative terms are "Loss," "Company," "Claim," and "Wrongful Act." It is undisputed that the Company is Twin River. The policy defines Loss as "damages, judgments, settlements, pre-judgment and post-judgment interest...." It defines a Claim as "a written demand for monetary or non-monetary relief." A Wrongful Act is "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a Company."

The policy also requires that the insured notify National Union of a claim or

potential claim and sets those parameters. Clause 6(c) states:

> If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim**, which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

In other words, the policy states that when an insured becomes aware that a claim may arise, it should give written notice to the Insurer of the Wrongful Act. And any claim subsequently made that relates to or comes from the same nucleus of facts as the original reported potential claim is considered to be made at the time the original notice was given.

The Court needs to find that Twin River notified National Union of "a written demand for monetary or non-monetary relief" made against Twin River for "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a Company." In the October 22, 2014, notice to National Union, Twin River identified the Stockholders' objections to its decision to pay out on the CVR shares in light of the expiration date and, in the event Twin River did pay the CVRs, the Stockholders objected to the price per share it determined was fair. It said, "Insured had issued notice indicating they are exploring transactions that may affect Contingent value rights (CVR's). Insured them received response from Solus' counsel expressing concern that insured may not be properly valuing the CVR's with any

potential transaction." ECF No. 25-4 at 3. That notice attached the First Salvo, a letter from the Stockholder's attorney. That letter made clear that they believed that Twin River's "officers and directors owe fiduciary duties to the Stockholders and are required to act in their best interest in any transaction involving the CVRs." *Id.* at 7. It also expressed concerns that Twin River was overvaluing the CVRs and that the inflated price was at odds with the terms of the Bankruptcy Reorganization Plan. *Id.* There is no dispute that National Union received the notice of circumstance and First Salvo and that it was a notice of a potential claim. But, did that notice of circumstance referencing a wrongful act ultimately evolve into the claim for a related wrongful act that Twin River alleges merits coverage?

B.  The Claim for a Wrongful Act

Twin River asserts that the claim reached its potential in the form of the Settlement Demand Letter; the Wrongful Act, as articulated in that letter, is Twin River's breach of its fiduciary duty to the Stockholders by favoring the CVR's position and the demand for monetary relief is that Twin River pay no more than $425 per CVR share and pay $5.6 million to cover their fees and expenses generated during the litigation of whether Twin River had a duty to the CVRs or the Stockholders.

The crux of National Union's argument that there was no claim for a wrongful act is that the $5.6 million was to settle a dispute not between Twin River and the Stockholders, but to settle a dispute between the CVRs and Stockholders. National Union argues that the Stockholder dispute created "business problems" for Twin River, but Twin River did not have to get involved or pay the settlement because it

had no stake in the outcome. It also argues that the breach of fiduciary duty language in the Second Salvo does not bolster the Settlement Demand Letter's vague references to the grounds for a claim because National Union did not know about that letter until June 2016, after Twin River already settled the case.

Because it is Twin River's burden to define its own case, the Court will start with its identification of the Settlement Demand Letter as its claim. ECF No. 26-10 at 2. This letter is from an attorney for two of the Stockholders, Solus and Wingspan. It recounts the weeklong negotiations between all the Stockholders (Apollo included) and Twin River to resolve all pending litigation, it sets a tender price for the CVRs at $400 per CVR, and it memorializes Twin River's agreement to pay the Stockholders $5.6 million they demanded to pay for their legal fees and expenses. *Id.* The writer expresses the Stockholders' disappointment upon learning that Twin River intended to increase the CVR price and pay the CVR's fees, leading to a decrease in its payment to the Stockholders. *Id.* Significantly, the attorney noted that Twin River "sued the Stockholders to whom it owes fiduciary duties." *Id.* The Stockholders highlighted that fiduciary duty by expressing "their grave concerns about the use of company cash to pay an out-of-the money contingent value right that will expire in 20 months." *Id.* Examples of conduct that the Stockholders alleged breached the duty are that Twin River brought the Adversary Proceeding where it supported the CVR's position on the tender offer, siding with the CVRs, and wasted millions in corporate assets litigating this issue. *Id.* The letter concluded with a demand that "the Stockholders are prepared to resolve their pending disputes provided (a) the CVR price does not

exceed $425 per CVR; and (b) Twin River agrees to provide $5.6 million to reimburse the Stockholder' fees and expenses." *Id.*

The Court finds that this letter is the final iteration of the claim that Twin River flagged in the notice of circumstance; i.e., the Stockholders demanded reimbursement of expenses paid fighting Twin River's support for and interest in paying the CVRs, which the Stockholders deemed to be a breach of Twin River's fiduciary duty to them and demanded that Twin River limit its valuation of the CVRs. Twin River was very much involved and had a stake in the dispute over the CVR payments. It is clear to the Court that the Stockholder's concern all along the way was that Twin River had a superior duty to them over the CVRs by virtue of the language in the Bankruptcy Plan of Reorganization and that any plan to not only compensate the CVRs before their interest evaporated, but also to pay an inflated price per share, was a breach of that duty. The Stockholders did not abandon their position that Twin River should not be using company monies to pay CVRs that would expire in twenty months, but made a demand for monetary relief to settle the CVR issue. Therefore, the Court finds that the Settlement Demand is a claim for a wrongful act under the applicable policy.[8]

---

[8] Even though National Union did not have the Second Salvo until after Twin River settled the case, that letter from the Stockholders draws on the same fiduciary duties as referenced in the notice of circumstance that attached the First Salvo. The situation had become must more intense as at that point in November 2015, Twin River had been advised by the Bankruptcy Court that it should make the tender offer for the CVRs. The Stockholders made clear that they believed that Twin River was violating its fiduciary duty by making the tender offer to the CVRs. While the Second Salvo was certainly more explicit in its language than the First Salvo and Settlement Demand Letter as to the Wrongful Act, its message and tone is duplicative

C.  Allocation

National Union further argues that Twin River had the burden to allocate the settlement amount between potentially covered and uncovered claims and failed to do so. An insured has the burden to allocate, but that burden "arises only after it has been demonstrated that a portion of the verdict or settlement is covered by the policy or policies and a portion is not." *Cont'l Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 376 (1st Cir. 1991). Because the Court has found that there is one claim in this case, the breach of fiduciary duty initially set forth in the notice of circumstance and First Salvo and culminating in the Stockholder's Settlement Demand Letter, allocation is not an issue in this case.[9]

## CONCLUSION

The Court has determined from the undisputed material facts in the record that Twin River has made a covered claim under the National Union policy. As such, National Union's motion for summary judgment (ECF No. 24) is DENIED. Twin

---

of those documents National Union received prior to the settlement.

[9] The policy in this case does not speak to the allocation of loss between covered and uncovered claims. But, to the extent that National Union believed at some point between the notice of circumstance, the Settlement Demand Letter, and the claim that there may be both insured and uninsured claims, it, as the insurer, had a duty to inform Twin River that it was advisable to allocate any potential settlement. *Duke v. Hoch*, 468 F.2d 973, 979-80 (5th Cir. 1972). It is undisputed that National Union was informed of the ongoing negotiations between Twin River and the Stockholders and the potential terms of the settlement ultimately reached. It could have informed Twin River that it was going to require allocation before the settlement was finalized but chose not to do so.

River's motion for partial summary judgment[10] (ECF No. 22) is GRANTED.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

August 1, 2018

---

[10] Twin River did not move for summary judgment on the reasonableness of the amount of the settlement. As that is all that remains of its case, the Court will reach out to the parties to determine how the case will proceed.